UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JSB, a minor, by his parents and natural guardians MARINA DIAZ and JOSE DIAZ,<br><br>  Plaintiffs,<br><br>  v.<br><br>CARSON CITY SHERIFF HARRY W. WHEELER,<br><br>  Defendant. | Case No. 3:14-cv-0436-LRH-WGC<br><br>ORDER |

Before the court is defendant Carson City Sheriff Deputy Harry W. Wheeler's ("Deputy Wheeler") motion for summary judgment on the issue of qualified immunity. ECF No. 35. Plaintiff JSB, a minor, by and through his parents and natural guardians Marina Diaz and Jose Diaz, filed an opposition (ECF No. 37) to which Deputy Wheeler replied (ECF No. 41).

**I.      Facts and Procedural History**

This case arises out of the arrest of plaintiff JSB, a minor, by defendant Deputy Wheeler. On the afternoon of May 20, 2014, JSB, then a student at Carson Middle School, was walking after school with three other students including two males, JJG and FR, and a female, NG, near West Second Street and South Curry Street in Carson City, Nevada. Non-party Officer Orlando Sanchez ("Officer Sanchez"), an officer with the Carson City School District, was on after-school patrol when he noticed JSB and the other boys "pushing around" NG, who at the time was

1

JSB's girlfriend. Officer Sanchez pulled up next to the students and asked if there was a problem. The male students replied that they were "just fooling around." Not receiving an answer from NG, Officer Sanchez asked her if everything was okay to which she replied yes. Officer Sanchez instructed the students to watch their behavior and then drove to a spot where he could continue to view the students as they walked down the street.

As the group of students continued on, Officer Sanchez observed plaintiff JSB grab NG one more time, Officer Sanchez then moved towards the group and radioed the Carson City Sheriff's Office to report that he was going to make contact with a group of students. Officer Sanchez approached the group on foot and again asked the students what was going on. At that point the three boys allegedly started yelling at Officer Sanchez while JSB said "fuck this, let's go" before walking away. Officer Sanchez told the boys that he was calling for back-up to which JSB turned around and replied "bring your backup homie, fuck your back up." Officer Sanchez then radioed the Carson City Sheriffs' Office for officer assistance.

Deputy Wheeler and non-party Deputy Rick Encinas arrived on scene within minutes and made contact with Officer Sanchez. Officer Sanchez identified JSB and told Deputy Wheeler that he was the student causing problems. Deputy Wheeler then walked towards JSB and allegedly grabbed a hold of his wrist. JSB pulled away and began twisting, flailing, and spinning around to get out of Deputy Wheeler's grasp. Deputy Wheeler then allegedly lifted JSB off the ground, slammed JSB back to the ground on his stomach, placed his own foot on JSB's back, and then lifted JSB by one leg until he eventually placed JSB in handcuffs. JSB was subsequently placed under arrest for resisting a public officer in the course of his official duties, a violation of Carson City Municipal Code § 8.04.050.[1]

On August 19, 2014, JSB filed the underlying complaint against Deputy Wheeler alleging two causes of action: (1) a Section 1983 claim for excessive force; and (2) common law assault and battery. ECF No. 1. Thereafter, Deputy Wheeler filed the present motion for summary judgment. ECF No. 35.

---

[1] Since the time of JSB's arrest, the Nevada Supreme Court struck down Carson City Municipal Code § 8.04.050 as unconstitutionally vague. *See Scott v. First Judicial Dist. Court of Nev.*, 363 P.3d 1159 (2015). As a result of the Nevada Supreme Court's holding in *Scott*, JSB's juvenile conviction was dismissed.

2

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

///

## III.   Discussion

### A.   Excessive Force Claim

In his complaint, JSB alleges that Deputy Wheeler engaged in excessive and unreasonable force when he arrested JSB on the afternoon of May 20, 2014. *See* ECF No. 1. In the present motion, Deputy Wheeler contends that he is entitled to qualified immunity on JSB's excessive force claim. *See* ECF No. 35.

The doctrine of "[q]ualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under this doctrine, it is well established that "[g]overnment officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In contrast to a standard motion for summary judgment, which places the burden on the moving party to point out the lack of any genuine issue of material fact for trial, a motion based on a claim for qualified immunity imposes the burden on the plaintiff to show "both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). However, government officials are not entitled to qualified immunity if there are disputed issues of material fact that preclude the court from determining defendant's conduct or require the court to weigh conflicting testimony. *See Sandoval v. Las Vegas Metro. Police Dep't.*, 756 F.3d 1154, 1166 (9th Cir. 2014) (overturning the district court on the basis that the district court "improperly weighed conflicting evidence with respect to disputed material facts" to justify the use of force as all of the court's factual conclusions were "based on conflicting testimony, and drew upon the officers' version of events rather than [plaintiff's] testimony" as is required).

A claim that an officer has used excessive force in the course of seizing a person is analyzed under the Fourth Amendment's objective reasonableness standard articulated in *Graham*. *Scott v. Harris*, 550 U.S. 372, 381 (2007). The appropriate test is "whether the officers'

4

actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hooper v. County of San Diego*, 629 F.3d 1127, 1133 (9th Cir. 2011). To determine if a Fourth Amendment violation has occurred, the court first assesses the gravity of the intrusion by evaluating the type and amount of force inflicted. *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). The court then balances "the extent of the intrusion on the individual's Fourth Amendment rights against the government's interests" in order "to determine whether the officer's conduct was objectively reasonable based on the totality of the circumstances." *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). To complete this balancing analysis, the court must examine several factors including: (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual actively resisted arrest." *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 931 (9th Cir. 2001). Further, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hayes v. County of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013) (internal punctuation and citations omitted). Thus, "all determinations of unreasonable force . . . must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*.

In this action, Deputy Wheeler argues that JSB cannot establish that the amount of force he used to effectuate JSB's arrest was excessive under the standard defined in *Graham*. Rather, Deputy Wheeler contends that the amount of force he used was *de minimis* under the circumstances. Specifically, Deputy Wheeler contends that after he showed up to the scene and saw JSB walking away from Officer Sanchez, he moved towards JSB, ordered him to stop, and reached out and took hold of JSB's wrist. At that point, JSB attempted to pull away and resist Deputy Wheeler's verbal commands and attempts at physical restraint. Thus, in order to stop JSB from hurting himself, Deputy Wheeler picked him up and pinned him to the ground before placing him in handcuffs. Deputy Wheeler argues that this *de minimis* amount of force was

reasonable as the result of a police officer's attempt to restrain a subject who was actively and physically resisting arrest. Thus, Deputy Wheeler contends that he did not violate JSB's clearly established constitutional rights.[2]

However, the court finds that there are disputed issues of material fact related to the actual force Deputy Wheeler used against JSB which precludes granting summary judgment at this time. *See Sandoval*, 756 F.3d at 1166 (holding that government officials are not entitled to qualified immunity if there are disputed issues of material fact that preclude the court from determining the defendant's conduct). In contradiction to Deputy Wheeler's version of events, JSB has proffered deposition testimony and declarations from himself, the other students present at JSB's arrest, and several non-involved third-party witnesses, which, when viewed in the light most favorable to JSB, support his claim that Deputy Wheeler used excessive force. For example, rather than simply place JSB on his stomach, the proffered testimony suggests that Deputy Wheeler lifted JSB high off the ground and then slammed him back to the ground, stunning him, at which point Deputy Wheeler placed his booted foot onto JSB's back and spine, pinning him to the ground before lifting JSB's leg off the ground and stretching his body. Further, when placing JSB in the squad car Deputy Wheeler allegedly slammed JSB into the car before opening the rear door. Moreover, the testimony suggests that Deputy Wheeler did not identify himself or tell JSB to stop before grabbing him from behind. The only undisputed evidence in this action is that Deputy Wheeler is a 6' 2" tall, approximately 240 lb. trained Carson City Sheriff Deputy who has received on the job training in using various levels of force to subdue suspects and effectuate an arrest. In contrast, at the time of the incident JSB was a student at Carson Middle School and was only 4' 11" tall and approximately 100 lbs. All of these facts taken together directly dispute Deputy Wheeler's version of events and the amount of force used on JSB. Although, the court recognizes that Deputy Wheeler challenges all of the evidence proffered in support of JSB's opposition, the court cannot, at this time, weigh the evidence and

---

[2] It was well established that at the time of JSB's arrest, an officer could use reasonable *de minimis* force to effectuate the arrest of a suspect who was actively resisting arrest. *See Tatum v. City & County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006). Likewise, it was well established at the time of JSB's arrest that an officer could not use unreasonable force – including body slamming a suspect to the ground or stepping on a suspect's body - against a minor that was neither resisting arrest nor subject to arrest. *See Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007).

testimony presented in this action and must view the evidence in the light most favorable to JSB. *See Sandoval*, 756 F.3d at 1166. Therefore, the court cannot find as a matter of law that Deputy Wheeler used only constitutionally reasonable *de minimis* force to effectuate JSB' arrest. Accordingly, the court shall deny Deputy Wheeler's motion for summary judgment on the issue of qualified immunity.

### B. Assault and Battery

JSB's second claim for relief is for common law assault and battery. In his motion, Deputy Wheeler argues that he is immune from liability as to this supplemental state tort claim under the Nevada doctrine of discretionary act immunity.

This court has previously recognized that "a law enforcement officer is generally afforded discretionary-act immunity in conducting an investigation and effectuating an arrest, so long as the officer does not violate a mandatory directive in doing so." *Sandoval v. Las Vegas Metro. Police Dep't*, 854 F. Supp. 2d 860, 880 (D. Nev. 2012); *see also, Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d 932 (Nev. 1994) ("As a general matter, under Nevada Revised Statute (NRS) 41.032 'no action may be brought' against any public officer based upon 'the failure to exercise or perform a discretionary function . . . whether or not the discretion involved is abused.'"). In order to extend discretionary-act immunity, a public officer's exercise or performance of a discretionary function must (1) involve an element of individual judgment or choice and (2) be based on consideration of social, economic, or political policy. *Boulder City v. Boulder Excavating*, 191 P.3d 1175 (Nev. 2008). In the instant case, the decision to detain and arrest JSB was a discretionary act as a matter of law. *See Herrera v. Las Vegas Metro. Police Dep't.*, 298 F. Supp. 2d 1043, 1054 (D. Nev. 2004) ("[a] police officer's strategy for approaching [a suspect], the moment by moment decisions they [make] throughout the interaction, and their ultimate use of lethal force . . . [are], as a matter of law, discretionary acts"); *see also, Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007) ("An officer's decision as to how to accomplish a particular seizure or search is generally considered a discretionary determination under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases.").

However, the Ninth Circuit has held that an officer is not entitled to discretionary act immunity from state law claims where a reasonable juror could find that the officer's conduct constituted a deliberate and willful disregard for the law, or that malicious conduct motivated the officer's animosity toward plaintiff. *Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007). Further, "where an officer's actions are attributable to bad faith, immunity does not apply whether an act is discretionary or not." *Falline v. GNLV Corp.*, 823 P.2d 888 (Nev. 1991). "Thus, where an officer arrests a citizen in an abusive manner not as the result of the exercise or poor judgment as to the force required to make an arrest, but instead because of hostility toward a suspect or a particular class of suspects (such as members of racial minority groups) or because of a willful or deliberate disregard for the rights of a particular citizen or citizens, the officer's actions are the result of bad faith and he is not immune from suit." *Davis*, 823 P.2d at 1060.

Here, the court has reviewed the documents and pleadings on file in this matter and finds that Deputy Wheeler is not entitled to discretionary act immunity on JSB's assault and battery claim. As addressed above, JSB has proffered evidence that Deputy Wheeler engaged in excessive force in effectuating JSB's arrest. Viewing the evidence in the light most favorable to JSB, as the court is required on summary judgment, it would be possible for a reasonable jury to conclude that the actions of Deputy Wheeler were done in bad faith or that he deliberately engaged in excessive force when he arrested JSB. As such, plaintiff has submitted evidence which could support a finding that Deputy Wheeler's conduct was motivated by malicious hostility or willful disregard of the law. Therefore, the court shall deny Deputy Wheeler's motion as to this claim.

///

///

///

///

///

///

///

      IT IS THEREFORE ORDERED that defendant's motion for summary judgment (ECF No. 35) is DENIED in accordance with this order.

      IT IS FURTHERED ordered that the parties shall have sixty (60) days from entry of this order to prepare and submit a joint pre-trial order to the court on all remaining issues in this action.

      IT IS SO ORDERED.

      DATED this 30th day of January, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE